UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOCAL #773 OF THE INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, et al.,<br>    Plaintiffs,<br>    v.<br>CITY OF BRISTOL, et al.,<br>    Defendants. | No. 3:11cv1657 (MPS) |

**RULING AND ORDER**

Local #773 of the International Association of Firefighters ("Union"), Sean Lennon, and Dana Jandreau sue the City of Bristol ("City"), Mayor Arthur J. Ward, members of the Bristol City Council, and members of the Retirement Board of the City of Bristol Fire Fighters Benefit Fund, alleging that Defendants breached their fiduciary duty by enacting and administering an ordinance that transferred surplus assets from a pension fund to a health benefits account. Defendants have filed a Motion to Dismiss [doc. # 34], which argues, among other things, that the Court lacks subject matter jurisdiction because Plaintiffs do not have standing. For the reasons that follow, the motion is granted.

**I.  Factual Background**

The following facts are taken from Plaintiffs' Amended Complaint [doc. # 28] and outside materials referenced in or annexed to the parties' briefing on the motion to dismiss, *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (court may refer to evidence outside the pleadings to resolve whether it has jurisdiction to hear a claim).

The Union represents firefighters currently employed by the City, but ceases to represent the firefighters upon their retirement. Under the collective bargaining agreement ("CBA") between the City and the Union, the City is responsible for paying its firefighters a pension upon their retirement. To ensure the firefighters' pension obligations are met, the CBA provided for

the establishment of the Fire Fighters Benefit Fund ("Fund"), into which both the City and Union members would make contributions. The CBA required that the Fund be administered by a Retirement Board consisting of the Mayor, the City Treasurer, members of the Board of Fire Commissioners, and a member of the Fire Department. The Retirement Board is responsible for safeguarding the Fund to ensure that firemen receive their pensions. The terms of the Fund are set by municipal ordinance, specifically Sections 2-97.7 through 2-97.20, with subsequent sections—2-97.21 through 2-97.75—reserved for future use.

The CBA also requires the City to provide for health insurance for both active and retired firefighters. Faced with increasing costs of providing health insurance, in early 2011 Mayor Ward and the City Council considered ways to reduce the City's financial obligations. As the Fund was running a significant surplus, Mayor Ward and the City Council proposed using surplus money from the Fund to establish a Fire Retiree Health Account, under Section 401(h) of the Internal Revenue Code, 26 U.S.C. § 401(h), which permits the use of pension plan assets to fund retiree health insurance in certain circumstances. As the City's previous ordinance concerning the pension plan did not provide for the payment of health benefits specifically from the Fund, the City deliberated on the terms of a new ordinance, Section 2-97.21, which the parties refer to as the "Health Account Ordinance."

At a City Council hearing on May 24, 2011, the Union objected to this proposal, arguing that the CBA had to be amended before the City Council could create a health account from the Fund, that the City had no written legal opinion that indicated that transferring the funds was legal, and that the City was remiss in not first obtaining a determination letter from the Internal Revenue Service ("IRS") approving the proposed ordinance. A week later, the City Council adopted the proposed ordinance over the Union's opposition. On June 2, 2011, the City Council,

acting under the recently enacted Health Account Ordinance, directed the trustees of the Fund to transfer to the § 401(h) account an amount determined by the Fund's actuary. On July 1, 2011, the trustees transferred $ 1,292,321 to the Section 401(h) account.

Believing these actions improper, the Union and Messrs. Lennon and Jandreau brought this action. Mr. Lennon has been a firefighter employed by the City for sixteen years, and he is a member of the Union, as well as its president. Mr. Lennon makes contributions to the Fund from his paycheck and will be eligible to receive a pension from the Fund upon retirement. Mr. Jandreau worked as a firefighter in the City from 1977 through 2010, during which time he contributed $40,228.92 in untaxed contributions to the Fund. As a retiree, he receives a pension from the Fund.

## II.     Standard of Review

The standard for ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is well established. "A case is properly dismissed for lack of subject matter jurisdiction . . . when the court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. On a motion to dismiss under Rule 12(b)(1), the party asserting subject matter jurisdiction bears the burden of proving by a preponderance of the evidence that jurisdiction exists. *See id.* The Court may refer to evidence outside the pleadings to assist in its determination. *See id.*

## III.    Discussion

The gravamen of Plaintiffs' claim is that Defendants violated an alleged fiduciary duty by enacting and enforcing the Health Account Ordinance, which allegedly endangers the qualified status of the firefighters' pension plan under federal tax law and, as such, threatens Plaintiffs with adverse tax consequences. Plaintiffs, however, lack standing to bring such a claim.

Under Article III, Section 2 of the Constitution, federal courts are empowered to adjudicate only "cases" and "controversies," a restriction that has engendered a series of doctrines aimed at ensuring that federal judges do not exceed their constitutionally prescribed role. Standing is one of those doctrines. To have standing, a plaintiff must establish three elements: (1) that he suffered an injury-in-fact, (2) that a causal connection exists between the injury and the defendant's conduct, and (3) that the injury will be redressed by a favorable court decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("To establish Article III standing, an injury must be [1.] concrete, particularized, and actual or imminent; [2.] fairly traceable to the challenged action; and [3.] redressable by a favorable ruling." (quotation marks omitted)). A plaintiff invoking federal jurisdiction bears the burden of establishing the three elements of standing. *See Lujan*, 504 U.S. at 561; *Clapper*, 133 S. Ct. at 1148–49; *Makarova*, 201 F.3d at 113. Defendants argue that Plaintiffs have failed to establish the first element, i.e., an injury in fact. (*See* Def.'s Mem. of Law II [doc. # 34] at 12–13; Def.'s Mem. of Law I [doc. # 20-1] at 16.)[1]

Plaintiffs argue that the Union and Messrs. Lennon and Jandreau suffered injury because the Health Account Ordinance has thrown "the tax status of their retirement contributions into

---

[1] After the Court denied Defendants' first motion to dismiss without prejudice, Plaintiffs were allowed to amend their complaint and Defendants were permitted to incorporate their prior briefing by reference. The Court refers to Defendants' two briefs as "Def.'s Mem. of Law I" and Def's Mem. of Law II."

doubt." (Pls.' Opp'n [doc. # 41] at 20–21.)[2] Specifically, as a current employee of the City's Fire Department, Mr. Lennon does not pay taxes on income that he contributes to the Fund, because it is a qualified defined benefit pension plan, and he worries that the Health Account Ordinance will lead to the plan's disqualification. If the plan were to lose its "qualified" status, Mr. Lennon fears that his contributions would become immediately taxable, that he would lose the benefit of tax deferral as to contributions made after the ordinance was adopted, and that he might face penalties for underpayment of taxes. (*See id.* at 19.) Similarly, Mr. Jandreau, a retired firefighter who has contributed thousands of dollars to the Fund, worries that, if the retirement plan becomes disqualified, he "would have to pay taxes on his past contributions." (*Id.* at 20.) Plaintiffs do not allege that adverse tax treatment has already taken effect or that Mr. Jandreau has not been paid any of the pension benefits owed to him.

As an initial matter, the fact that Plaintiffs frame the harm as having already occurred (*see* Pls.' Opp'n at 20 ("Lennon and Jandreau *have been injured* . . . ." (emphasis added))) does not make it so. The current harm alleged is Plaintiffs' doubt about the tax status of their pension contributions, together with their concern about future injury. But subjective fears, without more, cannot constitute injury sufficient to create standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("The reasonableness of [the plaintiff's] fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective

---

[2] Plaintiffs allege that the Union has associational standing because its members would have standing to sue in their own right (*see* Pls.' Opp'n at 21 (citing the test for associational standing articulated in *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004))). The question of whether the Union has standing hinges on whether its members have standing. With its membership limited to current employees, the question of the Union's standing is not materially distinct from the question of Mr. Lennon's standing. As the Union has not given the Court any reason that the Union's standing is broader than Mr. Lennon's standing, the Court concludes that its analysis regarding Mr. Lennon, *infra*, applies with equal force to the Union.

apprehensions." (emphasis in original)). In other words, a subjective fear of future harm cannot serve as an independent basis for an injury-in-fact.

Plaintiffs' only colorable claim of standing is that they will suffer harm in the future in the form of adverse tax consequences.  This theory of standing fails. In addition to being concrete and particularized, an alleged future harm must be "actual or imminent" to qualify as an injury-in-fact. *See Lujan*, 504 U.S. at 560.  While the concept of imminence is a flexible one, at a minimum the alleged future harm must be "certainly impending," and it is insufficient to allege merely that a future injury is possible. *Clapper*, 133 S. Ct. at 1147; *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute injury in fact." (quotation marks omitted)).[3]  Although the "certainly impending" standard does not demand a showing that the alleged future harm is "literally certain" to happen, *see Clapper*, 133 S. Ct. at 1154 n.5, it must be more probable than reasonably likely.

Plaintiffs have failed to satisfy the "certainly impending" standard.  Plaintiffs speculate about possible adverse tax consequences without demonstrating that IRS enforcement is probable—much less certainly impending.  Plaintiffs articulate their basis of injury in the Amended Complaint: The transfer of money from the Fund to pay for health care expenses without amending the pension plan to provide for the payment of health care expenses violated I.R.C. §§ 401(a) and (h), and therefore ran the risk that the plan would be disqualified and that plan participants would incur additional tax liability under I.R.C. § 402(b). (*See* Am. Compl. ¶¶ 57–62.) Specifically, Plaintiffs allege that "§ 401(h) does not permit pension funds to be spent

---

[3] Before the Supreme Court's decision in *Clapper*, the Second Circuit applied a more lenient standard under which a threatened injury could qualify as an injury in fact if there were an "objectively reasonable likelihood" that the injury would occur. The Supreme Court expressly rejected this approach, stating that this Circuit's approach was "inconsistent with [the] 'threatened injury' requirement." *Clapper*, 133 S. Ct. at 1141.

on health care costs unless the 'pension plan' itself 'provide[s] for the payment of benefits for sickness, accident, hospitalization, and medical expenses of retired employees, their spouses and their dependents,'" and that "§401(a) prohibits pension plan assets from being spent on anything not provided for under the pension plan terms." (*Id.* ¶¶ 57–58.)  Put differently, Plaintiffs argue that Defendants' failure to amend the pension plan to permit payment of health care expenses will cause the IRS to disqualify the plan, causing Plaintiffs pecuniary harm.

The key problem with this theory is Plaintiffs' assumption that the Health Account Ordinance did not amend the retirement plan.  As Defendants point out, there are good reasons to believe the Health Account Ordinance amended the plan.  The City charter sets the Fund's terms in Division 6, Sections 2-97.7 through 2-97.20, with Sections 2-97.21 through 2.97.75 reserved for future ordinances. Furthermore, Section 2-97.20 states as follows:

> Sec. 2-97.20 – Reservation of right to amend or repeal pension ordinance. The right of the City to amend or repeal the provisions of these Sections 2-97.7 et seq. at any time and from time to time, and to alter or vary the rate or amount of contributions required to the retirement allowance fund, or the benefits payable, or the method of computation of any pension payments at any time, is expressly reserved and the right of any employee, retired employee, official or employee of the city against the city in any way arising out of the provisions of this division shall be limited to the refund of any payments made by such person.

(Defs.' Mem. of Law I at 20 (quoting ordinance).) The Health Account Ordinance was proposed as Section 2-97.21, the section immediately following this express reservation of the right to amend the pension ordinance. (*See* Ex. C to Defs.' Mot. to Dismiss [doc. # 20-4].)  Together with the fact that the Health Account Ordinance addresses the payment mechanisms for pensioners' healthcare costs, the proximity of the Health Account Ordinance to the other sections in the municipal code constituting the pension plan suggests that the Health Account Ordinance

did, in fact, amend the pension plan.  Plaintiffs offer no evidence in response,[4] despite bearing the burden to establish the likelihood of IRS enforcement, and rely instead on a formalistic reading of the ordinance that would effectively require all amendments to include a "notwithstanding" clause or some other express recognition of the amending force of the provision.  Any suggestion that the IRS would share Plaintiffs' interpretation is speculative.

Even if Plaintiffs had established that the IRS was likely to agree with their interpretation of the Health Account Ordinance, Plaintiffs can only speculate about the nature of the IRS's response.  Plaintiffs have not submitted any evidence that suggests that the IRS would be likely to impose the type of tax consequences that Plaintiffs speculate will constitute their future injuries.  It seems at least as plausible that if the IRS believed the City had violated § 401(h), it would notify the City and request that it cure the defect before penalizing pensioners and employees making contributions toward their retirement.  It would be speculative to assume that the IRS would impose tax liability on Plaintiffs, and the "Court is reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 133 S. Ct. at 1141.  Moreover, Plaintiffs offer no reason to suggest that the IRS will initiate any enforcement action in the near future.  Although the City adopted the Health

---

[4] Section 21(d) of the City Charter, cited in Defendants' brief (*see* Defs.' Mem. of Law I at 20 n.11), offers slight support for Plaintiffs' position. This section provides that "[a]ll ordinances which amend or repeal existing ordinances shall set forth in full the section or subsection to be amended or repealed, and if it is to be amended shall indicate the matter to be omitted from the recused section or subsection by brackets and shall indicate new matter by underlining or the use of italics." (*Id.*) Although Plaintiffs have not argued the point, this section could be read as imposing a requirement that any amendment be labeled as such. The Court, however, finds Section 21(d) of ambiguous effect here, because the Health Account Ordinance is underlined, which suggests that the text is being added to an existing provision (*see* Ex. C to Defs.' Mem of Law I), and also because Plaintiffs have not provided authority suggesting that the IRS would find such a formatting provision controlling on the question of whether a new ordinance in substance amends a pension plan.

Account Ordinance nearly two years ago, Plaintiffs have not produced any evidence that IRS enforcement is imminent.

Plaintiffs implicitly acknowledge that they seek redress for an abstract and speculative future injury when, in their opposition brief, they state that "[i]f the Court will not act on it now, this matter will likely be forgotten." (Pls.' Opp'n at 18.) Future harms that are *impending* do not tend to fade into oblivion in the absence of court intervention; they occur. Plaintiffs have not established an injury-in-fact, because the future harm they allege is improbable and speculative, not "certainly impending." *Clapper*, 133 S. Ct. at 1143.

## IV. Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction. Defendants' Motion to Dismiss [doc. # 34] is GRANTED. Anthony Benvenuto's Motion to Be Dismissed as a Defendant and Joined as a Plaintiff [doc. # 54] is DENIED as moot. The Clerk is directed to close this case.

IT IS SO ORDERED.

 /s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         April 9th, 2013